IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

James Hafke,

    Plaintiff,

    vs.                                    No.  1:11-cv-00220-JTN
                                              Hon. Janet T. Neff
                                              Magistrate Judge

The ROSSDALE GROUP, LLC, a Florida
limited liability company,

    Defendant.

_____

| | |
|---|---|
| Hugh M. Davis, Jr (P12555) | James G. Hafke (P 56656) |
| Constitutional Litigation Associates PC | Hafke Legal Services PC |
| Attorney for Defendant | Attorney for Plaintiff |
| 450 W Fort Street, Suite 200 | 74215 S. Pennsylvania Ave. |
| Detroit, MI  48226 | Lansing, MI 48910 |
| Tel: (313) 961-2255 | Tel:  (517) 482-3141 |
| Fax: (313) 961-5999 | Fax:  (517) 482-3359 |
| E-Mail: conlitpc@sbcglobal.net | E-Mail:  law@jameshafke.com |

**BRIEF SHOWING CAUSE THAT THIS COURT HAS JURISDICTION OVER THIS DISPUTE PURSUANT TO 28 U.S.C. § 1331 FOR A RESOLUTION OF THE SUBSTANTIAL FEDERAL QUESTIONS PRESENTED AND UNDER 28 U.S.C. § 1441 BASED UPON COMPLETE PRE-EMPTION OF THE CLAIMS BROUGHT IN THE COMPLAINT**

    **COMES NOW** Defendant, THE ROSSDALE GROUP, LLC (hereinafter ROSSDALE) through counsel and respectfully files this Brief Showing Cause that this Court has proper jurisdiction over this dispute brought by Plaintiff James Hafke (hereinafter Plaintiff or HAFKE) pursuant to 28 U.S.C. § 1331 under the substantial federal questions presented and under 28 U.S.C. § 1441 for complete

pre-emption of the claims brought in the complaint, and supports same with a memorandum of law which is part of this pleading, stating as follows:

## I. QUESTION PRESENTED

Whether a federal court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441 to resolve a claim brought by an attorney/plaintiff against an admittedly diverse, Florida-based corporation based on the most stringent state statute in the nation to regulate electronic marketing, where the application of such statute raises substantial federal questions, is completely preempted by federal law, and imposes significant barriers to interstate commerce?

Rossdale shows below that this Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441 to resolve state claims wholly preempted by federal law and a dispute that presents a substantial federal question. The U.S. Supreme Court has recently instructed that a federal District Court has federal question jurisdiction over a state claim if the claim raises a federal issue. This dispute raises the first ever reported application of a nearly ten-year-old Michigan statute, which is widely heralded as the most rigorous state law regulating electronic marketing. The result of Plaintiff's claim would be to impose significant barriers to interstate commerce – a result restricted by the United State Constitution's dormant Commerce Clause and specifically cautioned against in the passage of a federal state by the United States Congress, in the investigation by a United State Senate subcommittee, and in two separate cases to be heard by panels of the United States Courts of Appeal. Under the United States Supreme Court's opinion, findings by the United States Senate, and the authority of the United States Courts of Appeals, this Court must maintain jurisdiction of this dispute to adjudicate the substantial federal questions raised.

## II. RELEVANT FACTS

The relevant facts for the determination of this Brief are as follows. It is uncontested that

ROSSDALE is Florida-based corporation that is substantially involved in interstate commerce. ROSSDALE provides state bar accredited continuing education seminars to attorneys across the country. [Declaration of ROSSDALE CEO, **D.E. 1-2** at ¶3]. ROSSDALE markets its seminars to attorneys across the United States. ROSSDALE's weekly live, telephonic seminars and on-demand programs are utilized by attorneys in nearly every state in the nation. *Id*. at ¶ 7.

Plaintiff is an attorney representing himself. Plaintiff has never suffered a single penny in injuries through any actions taken by ROSSDALE. Instead, Plaintiff is seeking substantial damages from purportedly having to press the "delete" button on his e-mail a handful of times.

In full compliance with the federally enacted CAN-SPAM Act of 2003, 15 U.S.C. 7701, *et seq* ("CAN-SPAM"), ROSSDALE provides its complete name and mailing address in every notification that it sends to current and prospective customers, includes a easy link in each of its notifications by which recipients can immediately and at zero-cost unsubscribe to all future messages, maintains a toll-free number at which recipients can request to be immediately and permanently unsubscribed. *Id*. at 22-29. In addition, ROSSDLE also monitors daily the receipt of any mailed or faxed requests to unsubscribe. *Id*. Rather than simply click on the unsubscribe link or take any of the other abundantly simple, costless, and convenient methods to unsubscribe, HAFKE instead decided to file a lawsuit against ROSSDALE. *Id*. at 33-34. HAFKE has based his lawsuit on a Michigan state law that is reputed to be the most stringent state law in the nation to govern e-mail marketing. Desiree Cooper, *It's Way Past Time to Stop E-mail Spam*, DETROIT FREE PRESS, July 3, 2002, at 1B ("[T]he Legislature presented Gov. Jennifer Granholm with a bill that would be the most stringent anti-spam law in the nation.").

**III. THE DISTRICT COURT CONSIDERS THE COMPLAINT AT THE TIME OF REMOVAL IN DETERMINING THE COURT'S JURISIDCITION. THIS COURT MUST CONSIDER THE COMPLAINT SERVED ON ROSSDALE ON FEBRUARY 5, 2011, AS**

**THAT IS THE ONLY COMPLAINT TO EVER BE SERVED UPON ROSSDALE OR ROSSDALE'S COUNSEL PURSUANT TO MICHIGAN COURT RULES 2.107 "SERVICE AND FILING OF PLEADINGS AND OTHER PAPERS" (2011).**

On February 5, 2011, HAFKE served ROSSDALE with a Summons & Complaint signed by a court clerk and dated January 26, 2011. A true and accurate copy of the Summons and Complaint (hereinafter Complaint) is attached hereto as **Exhibit 1**. The 4page Complaint alleges that ROSSDALE violated the Michigan State Statute by (1) not including "ADV:" as the first 4 characters of its subject line, (2) not including in print as large the print used for the majority of its e-mail message any statement of a toll-free number for recipients to call or an address to which the recipient could write or e-mail to request being unsubscribed from future notifications, and (3) not including any notice that informs the recipient in print as large as that used for the majority of the e-mail that the recipient could be excluded from future notifications. Complt. at ¶ 6.

At the time that this case was removed from Michigan State Court, ROSSDALE and the undersigned counsel had only been served with the Complaint included as **Exhibit 1**. Michigan Court Rules 2.107 (2011) provides a clear set of rules governing all civil litigants in Michigan State Court. In a letter dated and mailed on February 15, 2011, the undersigned counsel communicated to HAFKE in writing that the undersigned counsel had been retained to represent ROSSDALE. A true and accurate copy of the letter to HAFKE dated February 15, 2011 is attached hereto as **Exhibit 2.** Therefore, the service of any Amended Complaint would have been required to have been made upon the undersigned pursuant to the provisions of MCR 2.017 that relate to service upon a party represented by counsel.

> MCR 2.107(C) states "Manner of Service. Service of a copy of a paper on an attorney must be made <u>by delivery or by mailing to the attorney at his or her last known business address</u> or, if the attorney does not have a business address, then to his or her last known residence address." (emphasis supplied). MCR 2.107(C)(1) further expands upon permissible means of delivery.  "Delivery to Attorney. Delivery of a copy to an attorney within this rule means handing it to the attorney personally, or<u>, if agreed to by the parties,</u>

e-mailing it to the attorney as allowed under MCR 2.107(C)(4)." MCR 2.107(C)(1)(a) (emphasis added).  The undersigned counsel has not been delivered with any Amended Complaint in the five months since ROSSDALE was first served and notice provided to HAFKE that the undersigned had been retained to represent ROSSDALE in this action.  MCR 2.107(C)(4) governs permissible means of service via e-mail, "E-mail. Some or all of the parties may agree to e-mail service among themselves by filing a stipulation in that case. Some or all of the parties may agree to e-mail service by a court by filing an agreement with that court to do so."  The undersigned counsel has at no time provided ANY stipulation or filed ANY agreement with ANY court that the undersigned would agree to service of ANY kind via e-mail.

MCR 2.107(C)(3) addresses permissible means of service through the mail, "[m]ailing a copy under this rule means <u>enclosing it in a sealed envelope with first class postage fully prepaid, addressed to the person to be served, and depositing the envelope and its contents in the United States mail</u>." To date, the undersigned has not received any Amended Complaint though the United States mail.  In addition, HAFKE has failed in the 17-week pendency of this dispute before this Court to provide any scintilla of proof that an Amended Complaint was ever enclosed in a seal envelope with first class postage fully prepaid, addressed to the undersigned, and deposited in the United States mail.  As further evidence that HAFKE did not mail an Amended Complaint, HAFKE had an opportunity in his Motion for Remand [**D.E. # 4**] three months ago to provide evidence that he had in fact complied with the Michigan Court Rules.  Again, HAKFE failed to do so.

The Supreme Court of Michigan has continually required adherence to the Michigan Court Rules. *See*, *e.g.*, *Moore v. Mich. Dep't of Corr.*, 462 Mich. 872, 873 (Mich. 2000) (Corrigan, J., concurring) ("The Michigan court rules regarding filing promote certainty by providing a <u>clear rule that applies to all litigation</u>.") (emphasis supplied). In expressly rejecting carve-outs for exceptions to the Michigan court rules, Justice Coorigan specifically held that "[t]hese considerations reveal <u>the necessity for a single, defined rule to make clear when a pleading is filed. Our court rules currently provide that clear rule</u>." *Id*. (emphasis supplied).

Based upon a clear reading of the Michigan Court Rules and the Supreme Court of Michigan's stated instruction on the importance of strictly adhering to the Michigan Court Rules to ensure a

"defined rule to make clear when a pleading is filed" (*id.*), it is obvious that an Amended Complaint was never served upon the undersigned. Therefore, the removal action to this Court was properly based upon the Complaint attached hereto as **Exhibit 1** as this Complaint was the only pleading to have been served upon ROSSDALE or the undersigned at the time of removal. This Court must also determine its jurisdiction over this dispute based upon the Complaint attached hereto as **Exhibit 1** as "[t]o determine whether jurisdiction is present for removal, we [courts] consider the claims in the state court petition <u>as they existed at the time of removal</u>." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (emphasis supplied).

### IV. THIS COURT MUST RETAIN JURISDICTION OF THIS DISPUTE AS THE CLAIMS AT THE TIME OF REMOVAL ARE SUBJECT TO COMPLETE FEDERAL PREEMPTION

Having established that (1) at the time of removal ROSSDALE had only been served with the Complaint attached as **Exhibit 1**, and (2) federal courts consider claims in state court petitions at the time of removal, and (3) HAFKE has failed to file any amended complaints with this Court during the 17-week pendency of this dispute, this Court must then consider whether the claims in the Complaint served on February 5, 2011 provide a basis for federal jurisdiction. While the general rule is that federal courts consider the face of a well-plead complaint, the United States Supreme Court has long held that "[o]ne corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (U.S. 1987)

Judge Edmunds recently held that her court was properly vested with federal jurisdiction over a state action brought under solely under state claims. In *Yousif v. Ocwen Mortg. Co., LLC*, 2010 U.S. Dist. LEXIS 83699 ( E.D. Mich. Aug. 16, 2010), the court had issued an Order to Show Cause after

a loan lenders/servicers removed claims based on alleged irregularities in the mortgage lending and servicing processes. "Plaintiffs purport to allege only state-law claims against Defendants" ranging from breach of contract to intentional torts. *Id*. at *5-6. The Supreme Court has instructed that "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (U.S. 1987). "Removal based upon federal question jurisdiction is proper 'when a federal statute wholly displaces [a] state law cause of action through complete preemption.'" *Ocwen Mortg. Co*., 2010 U.S. Dist. LEXIS 83699 at * 12 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

All three of the claims in the Complaint at issue here have been found by federal courts across the country to be COMPLETELY preempted by the CAN-SPAM Act of 2003 (15 U.S.C. 7701, *et seq*), the federally enacted statute to provide a national standard of electronic marketing regulation. The U.S. Congress has highlighted the positive economic impacts of electronic marketing on interstate commerce, describing the "low cost and global reach [of e-mail] make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce." 15 USCS § 7701. The pre-emption clause of the CAN-SPAM Act COMPLETELY pre-empts each and every claim in the Complaint as the Pre-emption Clause states "[t]his chapter supersedes <u>any</u> statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1) (emphasis supplied). The Complaint attached as **Exhibit 1** does not make a single claim or allegation as to falsity or deception of any e-mails at issue. Instead, HAFKE bases his complaint entirely on ROSSDALE's alleged failure to include certain labels and follow a certain format. **Exhibit 1**, Complt. at 4.

Pursuant to the Congressional intent that CAN-SPAM serve as the national standard on electronic marketing, federal courts across the country have uniformly held claims virtually identical to those brought by HAFKE to be COMPLETELY pre-empted by CAN-SPAM. The U.S. Court of Appeals for the Ninth Circuit found that state claims brought for labelling or specified content requirements were wholly pre-empted by federal law. *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1060-63 ("It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation. We are compelled to adopt a reading of the preemption clause that conforms with the statute's structure as a whole and the stated legislative purpose.") (emphasis supplied). This interpretation is further supported by a U.S. Senate Committee that evidences Congressional intent to wholly pre-empt the very causes of action brought by HAFKE and now at issue before this Court. *Virtumundo*, 575 F.3d at 1062 (quoting S. Rep. No. 108-102 ((("[A] State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be pre-empted."))). The *Virtumundo* Court also cited an addition U.S. Congressional record for further support of the "broad premeption" of the CAN-SPAM Act to cover the claims just like those raised by HAFKE. *See Virtumundo*, 575 F.3d at 1062 (citing 150 Cong. Rec. at E73-01).

The U.S. Senate could not have more accurately predicted the claims that entrepreneurial plaintiffs like HAFKE would file in state court. HAFKE's claims for failure to include "ADV:" or to make certain addresses or phone number appear in a particular font or format are all clearly subject to COMPLETE pre-emption by the CAN-SPAM Act. In *Ben. Nat'l Bank*, 539 U.S. at 8, the Supreme Court set precedent for this Court to retain jurisdiction over this matter. The Court there held:

> When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. §

>       1441(b) [28 USCS § 1441(b)], which authorizes any claim that 'arises under' federal law to be removed to federal court.

*Ben. Nat'l Bank*, 539 U.S. at 8.

In deciding to exercise federal jurisdiction over the state-pled claims, the *Ocwen Mortg. Co.* court also considered Congressional action as further demonstration of Congressional intent to completely pre-empt certain claims under federal law. In *Ocwen Mortg. Co.*, the court respected that "Congress authorized the Office of Thrift Supervision ('OTS') to promulgate rules governing federal savings associations." 2010 U.S. Dist. LEXIS 83699 at *12. Here, this Court need only review the CAN-SPAM Act of 2003, the findings of a U.S. Senate Committee (S. Rep. No. 108-102), the U.S. Congressional record (150 Cong. Rec.), and the detailed analysis of a panel of U.S. Court of Appeals judges in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 to determine that Congress sought to completely pre-empt the very claims brought by HAFKE for specified content, format and labels. *See also Omega World Travel, Inc. v. Mummagraphics, Inc*., 469 F.3d 348, 355 (4th Cir. 2006) (finding that failing to respect Congressional intent and the pre-emption clause of the CANSPAM Act undermines Congress' enactment of the CAN+SPAM Act to "the point of near-irrelevancy").

The Sixth Circuit has long recognized the artful-pleading doctrine, under which "a federal court will have jurisdiction if a plaintiff has carefully drafted the complaint so as to avoid naming a federal statute as the basis for the claim, and the claim is in fact based on a federal statute." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 561 (6th Cir. 2007); *see also N. Penn Water Auth. v. BAE Sys.*, 2005 U.S. Dist. LEXIS 10210 (E.D. Pa. May 25, 2005) (finding that the artful pleading doctrine provides for federal jurisdiction over a federal question, even if not pleaded in the plaintiff's complaint, if the issue is nonetheless both "intrinsic and central" to the plaintiff's cause of action).

The first paragraph of the Complaint presents data to support HAFKE's claim of the cost of electronic marketing on a per-employee basis, for employees across the United States, as well as alleges an aggregate amount that e-marketing costs in productivity for every employee of all states in

the country.  **Exhibit 1** at 1. In both the "factual allegations" and "factual violations" of the state statute, HAFKE, again chooses to reference the per-employee cost of each employee in the United States as well as the total cost to all businesses in the United States. In effect, HAFKE has made allegations that present a federal issue while attempting to couch his argument through state claims. Although HAFKE artfully cites the Michigan statute, HAFKE's entire Complaint is "in reality based on federal law" as claims concerning the requirement to use certain font sizes and include characters like "ADV:" are completely pre-empted by federal law and could ONLY be raised under the CAN-SPAM Act of 2003. HAFKE's choice to reference costs to employees and businesses across the country further supports the conclusion that this claim is federal in nature and must be brought under an action for which this Court has original jurisdiction. Therefore, this Court must retain jurisdiction over this matter pursuant to 28 U.S.C. § 1441. *Ben. Nat'l Bank*, 539 U.S. at 8.

This Court's exercise of jurisdiction follows the established federal law in Michigan.  In *Welch v. Local 599, International Union, United Auto., etc*., 1988 U.S. Dist. LEXIS 16932 at *4 (E.D. Mich. Sept. 21, 1988), the Eastern District of Michigan considered a claim in which a plaintiff had "attempted to circumvent" federal law with state law claims.  The court held that 28 U.S.C. § 1446(b) permits a court to assert removal jurisdiction based on matters not set forth in the original complaint.  *Id*. The *Local 599* court followed *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (U.S. 1981), in which the Supreme Court held that "courts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum…and occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." (citing C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3722, pp. 564-566 (1976)). This Court's exercise of jurisdiction therefore comports with U.S. Supreme Court precedent as well as federal policies in the Sixth Circuit. *Local 599*, 1988 U.S. Dist. LEXIS 16932 at *6. ("[A]rtful pleading should not be permitted to operate to foreclose a defendant's

right to a federal forum, thereby interfering with Congress's explicit provision for removal.") (internal quotation marks omitted).

## V. THIS COURT WOULD STILL HAVE JURISDICTION OVER THIS CLAIM EVEN IF HAFKE HAD CLAIMED FALSITY AND DECEPTION AS CLAIMS IN HIS COMPLAINT

Based on the Congressional record, Congressional passage of the CAN-SPAM Act of 2003, the U.S. Senate Committee findings, and the precedent cited above, HAFKE's claims that ROSSDALE failed to follow certain font, format, or carry certain labels in the handful of messages at issue is COMPLETELY preempted. Even if HAFKE had pled falsity and deception into this Complaint or had properly served and filed an Amended Complaint, this Court would still have jurisdiction over this case. In the context of deciding a Motion to Show Cause, Judge Edmunds found that pursuant to 28 U.S.C. § 1441(c), "a single federal claim suffices to support removal of an entire action." *Ocwen Mortg. Co., LLC*, 2010 U.S. Dist. LEXIS 83699 at *12 (quoting *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 710 (7th Cir. 1992)(citing 28 U.S.C. § 1441(c))). Applying *Ocwen Mortg. Co.* and *Amoco Petroleum Additives Co.* to this dispute, this Court has jurisdiction over the entire claim based on the complete preemption over the claims regarding specified font, formats, and labels. Therefore, it is moot to query HAFKE's failure to file an Amended Complaint with this Court in the 17-week pendency of this case or to inquire on HAKE's failure to comply with the Michigan Court Rules regarding service of process in any pleadings subsequent to the service of the Complaint attached hereto as **Exhibit 1**.

## VI. THIS COURT ALSO HAS JURISDICTION OVER THIS MATTER BECAUSE OF SUBSTANTIAL FEDERAL QUESTIONS PRESENTED

In addition to finding federal jurisdiction under complete preemption, Judge Edmunds in *Ocwen*

*Mortg. Co*. also held that federal question jurisdiction existed under the state claims asserted by the plaintiff by implicating "significant questions of federal law." 2010 U.S. Dist. LEXIS 83699 at *16. Based on Judge Edmunds' well reasoned opinion and the precedent of a relatively recent U.S. Supreme Court case that originated in the Western District of Michigan, this Court may also exercise federal question jurisdiction over the state claims brought by HAFKE.

In *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg*., 545 U.S. 308, 314 (U.S. 2005), a unanimous United States Supreme Court held that a District Court may exercise jurisdiction over a state claim where the federal issue is substantial and the exercise of federal jurisdiction does not disturb the congressionally approved "balance of federal and state judicial responsibilities." The case began when a plaintiff brought suit in Michigan state court challenging its title to certain real property in Eaton Rapids. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg*., 207 F. Supp. 2d 694, 695 (W.D. Mich. 2002). The defendant removed the action to this District Court, claiming that the state claims raised questions of federal law. *Id*. Judge McKeague exercised federal jurisdiction over the state claims (*Id*. at 699) and the Sixth Circuit affirmed. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 377 F.3d 592 (6th Cir. 2004).

In affirming both Judge McKeague and the Sixth Circuit, a unanimous Supreme Court recognized that the Supreme Court has a "longstanding" precedent "for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Darue Eng'g & Mfg*., 545 U.S. at 312 (citing *Hopkins v. Walker*, 244 U.S. 486, 490-491 (1917)). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Darue Eng'g & Mfg*., 545 U.S. at 312 (citing ALI, STUDY OF THE DIVISION OF JURISDICTION BETWEEN STATE AND FEDERAL COURTS 164-166 (1968)).

The Supreme Court has specifically avoided stating a "single, precise, all-embracing" jurisdictional test for federal questions raised in state claims and has instead instructed lower courts to consider whether the state-law claim raises a substantial federal issue, which the court "may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Darue Eng'g & Mfg.*, 545 U.S. at 314.

The first paragraph of HAFKE's 4-page complaint presents data to support HAFKE's claim of the cost of electronic marketing on a per-employee metric, across the United States, as well as data that purportedly encompasses every employee of each state in the country. **Exhibit 1** at 1. In both the "factual allegations" and "factual violations" sections of the Complaint, HAFKE again chooses to reference the per-employee cost of each employee in the United States as well as the total cost to all businesses in the United States.

As the master of his own Complaint, HAFKE has chosen to raise a substantial federal question by purporting that his alleged receipt of a handful of notifications is part of a $70 billion per year plague on the national economy.  It is difficult to imagine a more substantial federal issue than one which, according to HAFKE's own Complaint, costs U.S. businesses $70 billion annually.

In addition to HAFKE's conscious and intentional decision to raise an issue affecting the national economy, the very application of HAFKE's state-claims has been found by the U.S. Court of Appeals, the U.S. Senate, and the U.S. Congress to raise substantial federal issues due to adverse effects on interstate commerce.  The negative or dormant implication of the Commerce Clause prohibits state regulations that impede free private trade in the national marketplace. *GMC v. Tracy*, 519 U.S. 278, 287 (1997). The U.S. Supreme Court has held that "Congress' power to regulate interstate commerce implicitly prohibits states from passing any law that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir.

2006) (quoting *GMC*, 519 U.S. at 287 (internal quotation marks omitted)).

The Sixth Circuit has held that a determination as to whether a state statute violates the Commerce Clause of the U.S. Constitution is premised, in part, on the burden imposed by the statute on interstate commerce. *McNeilus Truck & Mfg., Inc. v. State ex rel. Montgomery*, 226 F.3d 429, 442 (6th Cir. 2000). Both the federal courts and the U.S. Congress have identified the inherent burdens on interstate commerce associated with divergent state statutes that seek to regulate internet and electronic marketing. In passing the CAN-SPAM Act, Congress intentionally chose to state in the Act that, "[m]any states have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply." 15 U.S.C. § 7701(a)(11) (emphasis supplied). As further evidence that claims like those brought by HAFKE impose substantial barriers to interstate Commerce, a U.S. Senate Committee found, "[I]n contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply." *Virtumundo*, 575 F.3d at 1063 (9th Cir. 2009) (citing S. Rep. No. 108-102, at 21-22).

U.S. Courts of Appeals and District Courts have also found significant barriers to interstate commerce to be raised by the claims presented in HAFKE's Complaint. The Ninth Circuit held that "a single e-mail could instantaneously implicate the laws of multiple jurisdictions as it journeys through cyberspace, traveling over various facilities before reaching its intended recipient, whose location is often unknown. Therefore, one state's Internet laws may impose compliance costs on businesses throughout the country.") *Virtumundo*, 575 F.3d at 1063 (internal quotation marks

omitted and emphasis supplied). This is especially true given that the statute at issue is the "most stringent anti-spam law in the nation." Desiree Cooper, *supra,* DETROIT FREE PRESS, July 3, 2002, at 1B. Under HAFKE's claims in the Complaint and written representations to ROSSDALE to effectively create a "litigation factory" with more e-marketing suits to come, this dispute highlights the barrier to interstate commerce presented with each state enacting divergent regulations. *See Virtumundo*, 575 F.3d at 1067 (Gould, J., concurring) (expressing criticism of a plaintiff who uses e-mail marketing laws "to build a litigation factory for his personal financial benefit."). Additionally, it would be impossible for ROSSDALE to comply with diverse state regulations if individual states differed on the specific labels to be included in subject lines or font size of particular content, for example.

In *Omega World Travel*, the Fourth Circuit expressly held "Congress found that because e-mail addresses do not specify recipients' physical locations, it can be difficult or impossible to identify where recipients live and hence to determine the state laws that apply." 469 F.3d at 355-56 (citing 15 U.S.C. § 7701(a)(11)). Allowing states to pass regulations that apply divergent requirements as to specific content, format, and labels would effectively prohibit electronic marketing as legitimate companies, like ROSSDALE, engaged in interstate commerce would find it "difficult or impossible" to determine where notifications would be opened and there which of up to 50 individual laws would apply. *See Omega World Travel*, 469 F.3d at 355-56; 15 U.S.C. § 7701(a)(11)("[I]t can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.").

In addition, interstate commerce would be significantly inhibited by the application of individual state regulations government e-marketing because the strictest provisions of each states' regulations would "become a *de facto* national standard, with all the burdens that imposed, even though the CAN-SPAM Act indicates that Congress believed a less demanding standard would best balance the

competing interests at stake." *Omega World Travel*, 469 F.3d at 356. Therefore, HAFKE's claims directly challenge the legislative intent and express letter of the law of the CAN-SPAM Act and Congress' careful considerations to not impede interstate commerce.

In addition to the actual language of the federal statute, the Congressional record, and decisions in both *Virtumundo, Inc*., 575 F.3d 1040 and *Omega World Travel*, 469 F.3d 348, other U.S. Courts of Appeals and U.S. District Courts have held claims regulating e-marketing and electronic commercial material to impose substantial barriers to interstate commerce. *See*, *e.g.*, *Psinet, Inc. v. Chapman*, 362 F.3d 227, 239 (4th Cir. 2004) (finding a state regulations on particular websites not to meet constitutional muster and to be "unduly burdensome on interstate commerce because they, in effect, restrict commercial electronic materials in all states, not just the state in which the statute was enacted"); s*ee also Madorsky v. Does 1-10*, 2006 U.S. Dist. LEXIS 37631, 5-6 (N.D. Ohio June 8, 2006) ("Congress enacted the CAN-SPAM after determining that <u>there is a substantial Governmental interest in the regulation of commercial electronic mail on a national basis</u>.")(emphasis supplied); *Ferron v. Echostar Satellite, LLC*, 2008 U.S. Dist. LEXIS 82841 (S.D. Ohio Sept. 24, 2008) (finding that permitting state to impose liability for email advertisements could "thwart the goal of Congress" in passing the CAN-SPAM Act).

The issues raised in HAFKE's Complaint, like those faced by Judge Edmunds in *Ocwen Mortg. Co*. are substantial and "resolution of these federal issues will facilitate resolution of Plaintiffs' claims. This in turn will provide guidance to other state and federal courts called upon to decide these same federal issues." 2010 U.S. Dist. LEXIS 83699 at *18. Given the positive economic impacts found by the U.S. Congress to be offered through the "unique opportunities for the development and growth of frictionless commerce," (15 USCS § 7701), it is a substantial federal question to determine the limits of a state legislature to impede interstate commerce. In fact, the "[Federal] Congressional determination of public policy" in the enactment of a federal e-marketing

act is based on "a substantial government interest in regulation of commercial electronic mail on a nationwide basis." *Id*. at § 7701(b)(1) (emphasis supplied).  This Court need only consider the allegations made on the first page of the Complaint and referenced again in the both sections of allegations in the Complaint to appreciate that HAFKE admits that electronic marketing itself is a federal issue, allegedly costing U.S. businesses some $70 billion annually.  *See* **Exhibit 1**.

**VII. THIS COURT'S EXERCISE OF JURISDICTION OVER THIS CASE WILL NOT UPSET PRINCIPLES OF COMITY AND IS CONSISTENT WITH THE SPECIFIED INTENT OF THE U.S. CONGRESS**

This Court's retention of jurisdiction over this dispute "will not upset any congressionally approved division of judicial responsibilities." 2010 U.S. Dist. LEXIS 83699 at *18. Just as in *Ocwen Mortg. Co.*, *id.* at *18-19, where "Congress has expressed its intent that federal courts are to adjudicate claims like those asserted by Plaintiffs here," Congress' enactment and detailed Committee reports indicate that Congress intended claims like those brought by HAFKE to be heard in a federal forum. *See* 15 USCS § 7701; *Virtumundo*, 575 F.3d at 1062 (quoting S. Rep. No. 108-102 (noting that claims like those made by HAFKE would be pre-empted and must be heard in a federal forum); *id*. (citing 150 Cong. Rec. at E73-01) (noting U.S. Congressional intent for the "broad premeption" of the CAN-SPAM Act to cover the claims like those raised by HAFKE)).

Additionally, "Congress has granted the federal courts supplemental jurisdiction under 28 U.S.C. § 1367(a) over the non-federal claims to the extent they form part of the same case or controversy." *Ocwen Mortg. Co.*, LLC, 2010 U.S. Dist. LEXIS 83699 at *19. Therefore even had Plaintiff made legitimate state claims, "[t]his Court's exercise of jurisdiction over this action will not offend the principles of comity." *Id*. By considering the detailed legislative history, express words of the Congressional enactment of the CANSPAM Act, and the analysis by the U.S. Courts of Appeals, this Court's retainer of jurisdiction over this dispute does not disturb the principles of comity.

**VIII. THIS COURT MAY RETAIN JURISDICTION OVER THIS MATTER WITHOUT CONSIDERING THE JURISDICTIONAL AMOUNT AT ISSUE AS JURISIDCTION BASED ON SUBSTANTIAL FEDERAL ISSUES AND COMPLETE PREMPTION PURSUANT TO 28 U.S.C. § 1331 AND 28 U.S.C. § 1441 DO NOT IMPOSE JURISDICTIONAL LIMITATIONS**

In the interest of minimizing legal fees to both parties and conserving judicial resources, ROSSDALE has focused this Brief on this Court's exercise of jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.

Under § 1331, this Court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." The legislative history of the CANSPAM Act of 2003, findings by the U.S. Courts of Appeals regarding Congressional intent, as well as several Congressional and Senate Committees all evidence the substantial federal questions and impediments to interstate commerce presented by the Complaint at issue. The first page of the Complaint and subsequent references in the sections regarding allegations underscore Plaintiff's admission as to the significant federal issues presented.

Pursuant to § 1441, this Court may exercise jurisdiction for any action over "which the district courts of the United States have original jurisdiction" or based on claims "founded on a claim or right arising under the Constitution." For the reasons presented above, HAFKE's Complaint is completely pre-empted and could only be brought under the CANSPAM Act of 2003. Despite artful pleading, HAFKE's allegations relating to the national costs imposed by electronic marketing further supports removal jurisdiction under 28 U.S.C. § 1441.

Neither 28 U.S.C. § 1331 and 28 U.S.C. § 1441 nor require a jurisdictional threshold for this Court to retain jurisdiction.

**IX. CONCLUSION**

Fort the reasons presented above, ROSSDALE requests that this Court retain jurisdiction over this dispute.

>Respectfully Submitted,
>
>*s/Hugh M. Davis, Jr.*
>
>Hugh M. Davis, Jr.
>
>Representing Defendant
>
>THE ROSSDALE GROUP, LLC

June 24, 2011

## PROOF OF SERVICE

I, Hugh M. Davis, Jr., being over the age of 18 and not a party to this action with an office at 450 W Fort Street, Detroit, Michigan 48226, hereby swear under penalty of perjury pursuant to the laws of Michigan that on June 24, 2011 I sent by first class mail this Brief to Show Cause to:

James G. Hafke
Hafke Legal Services PC
4215 S Pennsylvania Ave
Lansing, MI 48910

Executed in Detroit, Michigan on this 24th day of June, 2011.

>*s/Hugh M. Davis, Jr.*
>Hugh M. Davis, Jr.