UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES HAFKE,

                Plaintiff,                                         Case No. 1:11-cv-220

v.                                                      HON. JANET T. NEFF

ROSSDALE GROUP, LLC

                Defendant.

_____/


**<u>OPINION</u>**

      Pending before the Court is "Plaintiff [sic] Motion to Remand Case to 55th District Court of Michigan" (Dkt 4) on the grounds of lack of federal court jurisdiction. The Court required additional briefing and, while much of the briefing was not helpful, the Court has carefully reviewed the briefs that were not stricken from the record and has considered the motion in light of the arguments presented. For the reasons that follow, Plaintiff's motion to remand is denied, and Plaintiff's action is dismissed.

      Defendant, the Rossdale Group, LLC (Rossdale) removed the complaint (titled "Action under Unsolicited Commercial E-Mail Protection Act") to this Court (Dkt 1). The lawsuit had originally been filed in the 55th District Court in Michigan and claimed damages within the $25,000 jurisdictional amount of the Michigan district courts, MICH. COMP. LAWS § 600.8301. Plaintiff describes himself in his complaint as "a person whom [sic] received an unsolicited E-Mail from the Defendant(s)" and "is attempting to stop Spam in Michigan" (Dkt 1-3 at 1). His complaint alleges that he received six unsolicited e-mail messages from Rossdale in January 2011 and alleges

Rossdale breached Michigan's "Unsolicited Commercial E-Mail Protection Act" (Michigan Act) by not including "ADV" in the e-mail subject line and not including contact and opt-out information that conform to the requirements of the Act, MICH. COMP. LAWS § 445.2503 (Dkt 1-3, ¶ 6).

In its removal petition (Dkt 1), Rossdale described itself as a Florida company that is engaged in providing continuing legal education seminars (*id.* at 2). Rossdale originally sought removal on grounds of diversity, federal question, and preemption, pursuant to 28 U.S.C. §§ 1331, 1332, and 1441. Rossdale effectively withdrew its claim for removal based on diversity in its subsequent briefing (*see* Dkts 12, 15). The remaining grounds for removal are based on federal question. At issue is whether Plaintiff's claims are preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM), 15 U.S.C. § 7701 *et seq.* Plaintiff maintains that his claims are based on "falsity or deception" under the Michigan Act and are expressly not preempted by CAN-SPAM (Dkts 10, 18). Rossdale maintains that the claims are completely preempted (Dkts 15, 20).

I. PREEMPTION

The theory of preemption derives from the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting U.S. Const. art. VI, cl. 2). As applied, preemption means that "state laws that conflict with federal law are 'without effect.'" *Id.* (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746, (1981)). A state law claim may be preempted by federal law "either expressly or impliedly." *State Farm Bank v. Reardon*, 539 F.3d 336, 341 (6th Cir. 2008) (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982)). A state cause

of action is expressly preempted where "a federal statute or regulation contains explicit language indicating that a specific type of state law is preempted." *Id.* at 341-42 (citing *Fidelity*, 458 U.S. at 153). "If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." *Altria Group*, 555 U.S. at 76.

CAN–SPAM contains an explicit preemption clause, which states: "This chapter supersedes any statute, regulation, or rule of a State . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). CAN-SPAM also contains an express provision that limits the scope of its preemption. It states: "[t]his chapter shall not be construed to preempt the applicability of: (A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (B) other State laws to the extent that those laws relate to acts of fraud or computer crime." *Id.* § 7707(b)(2). CAN–SPAM thus expressly preempts any state statute that regulates the use of e-mail for commercial messages unless the statute prohibits "falsity or deception" in commercial e-mails. *Gordon v. Virtumundo, Inc.*, 575 F. 3d 1040, 1062, 1064 (9th Cir. 2009).

As a recent CAN-SPAM preemption decision noted, judicial analysis of "the scope of express preemption is informed by (a) the presumption that Congress 'does not cavalierly pre-empt state-law causes of action,' and (b) the purpose of Congress in enacting the legislation, as revealed by the text, statutory framework and 'the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.'" *Martin v. CCH, Inc.*, ___ F. Supp. 2d ___, No. 10-cv-3494, 2011 WL

1118492, at *3 (N.D. Ill. March 24, 2011) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485

(1996)).  The *Martin* court cogently summarized Congress's purpose in enacting the legislation:

> The CAN–SPAM Act was enacted in response to the rise of unsolicited commercial e-mail.  15 U.S.C. § [7701(a)(2)].  Citing the lack of success under the then-current conditions in which many states had attempted to regulate e-mail with different standards and requirements [15 U.S.C. § 7701(a)(11)], Congress determined that a nationwide standard for regulating unsolicited commercial e-mail was required.  *See* 15 U.S.C. § 7701(b)(1).

*Id.* at *3.

This Court's review indicates that only two federal appeals courts have addressed preemption

of state laws by CAN-SPAM, and both have found that claims similar to those made by Plaintiff,

alleging incomplete and misleading information in e-mail addresses and headers, are preempted.

*See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006); *Virtumundo*,

575 F. 3d at 1064.

In *Omega*, the court held that the express exception to preemption in CAN-SPAM, which

"allows states to prohibit 'falsity or deception' in commercial e-mail messages," does not

"encompass bare error" but, instead, is limited to actions in the vein of tort.  *Id.* at 354.  The court

found that claims that alleged inaccurate, unsolicited e-mail in violation of an Oklahoma statute, but

did not allege that the e-mail was materially false or deceptive, were preempted by CAN-SPAM.

*Id.* at 356-59.

In *Virtumundo*, the court considered claims of inaccurate, misleading e-mail header

information under a Washington state statute.  575 F.3d at 1064.  Noting that the state statute

contained "broad definitions [that] extend [the statute's] prohibitive reach and purport to regulate

a vast array of non-deceptive acts and practices," *id.* at 1059, the court held:

It would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation. We are compelled to adopt a reading of the preemption clause that conforms with the statute's structure as a whole and the stated legislative purpose. *See* 15 U.S.C. § 7701(b)(1). The CAN–SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication. To find otherwise would create "an exception to preemption [that] swallow[s] the rule and undermine[s] the regulatory balance that Congress established," and which would once again subject legitimate businesses to inconsistent and possibly incompatible state regulations.

*Id.* at 1063 (quoting *Omega*, 469 F.3d at 356). The *Virtumundo* court concluded that claims of

misrepresentations in headers did not rise "to the level of 'falsity or deception' within the meaning

of the CAN–SPAM Act's preemption clause." *Id.* at 1064.

Plaintiff argues that his claims are not preempted because he is pleading falsity and deception

under the Michigan Act. Neither party has cited, and research has confirmed the absence of, judicial

decisions that address the Michigan Act. All of the cases on which Plaintiff relies concern a

California statute that regulates unsolicited commercial e-mail, CAL. BUS. & PROF. CODE § 17529.5.[1]

The California Court of Appeal has recently held that § 17529.5 is not preempted by CAN-SPAM

because the state statute expressly prohibits *material* falsity or *material* deception in commercial

---

[1]The California statute provides, in pertinent part:
(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

(1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

(2) The e-mail advertisement contains or is accompanied by *falsified, misrepresented, or forged* header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

(3) The e-mail advertisement has a subject line that a person *knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact* regarding the contents or subject matter of the message.
(Emphasis added).

5

e-mail. *Hypertouch, Inc. v. Valueclick, Inc.*, 123 Cal. Rptr. 3d 8, 29 (Cal. Ct. App. 2011) (emphasis added). The court noted that its holding was consistent with the federal appeals court decisions discussed above, in that *Vitumundo* and *Omega* held that anti-spam claims were preempted when they alleged inaccuracies that did not rise to the level of materially deceptive content. *Id.*

Federal district courts in California have also held that state-law claims under § 17529.5, to the extent they alleged knowing and material deception, were not entirely preempted. *See Asis Internet Servs. v. Member Source Media, LLC,* No. C-08-1321 EMC, 2010 WL 1610066, at *5 (N.D. Cal. April 20, 2010); *Asis Internet Servs. v. Subscriberbase, Inc.*, No. 09-3503 SC, 2010 WL 1267763, at *13 (N.D. Cal. April 1, 2010). *See also Kleffman v. Vontage Holding Corp.*, 387 Fed. App'x 696, 698 (9th Cir. 2010) (dismissing anti-spam claim after California Supreme Court, in answer to a certified question, held that alleged conduct did not violate § 17529.5).

Michigan's "Unsolicited Commercial E-Mail Protection Act" differs markedly from the California statute. The Michigan Act proscribes e-mail that misrepresents certain information about the point of origin or transmission path, MICH. COMP. LAWS § 445.2503 and 2504, but it does not set a materiality standard for misrepresentation. Moreover, none of the terms of the Michigan Act explicitly addresses claims of falsity or deception. The technical violations regarding header, sender, and opt-out information that Plaintiff alleges as violations of the Michigan statute are not allegations of materially deceptive actions. His allegations are thus are subject to preemption under CAN-SPAM.

Plaintiff refers to an Amended Complaint in his arguments, claiming that it is the complaint Rossdale should have removed, and attaching it as an exhibit to his Motion to Remand (Dkt 4-2). He has not, however, formally addressed the alleged error by requesting leave to file his Amended

6

Complaint in this Court.  Plaintiff is not eligible to amend his complaint as a matter of course, at this point in the proceedings, and can amend it only by leave of the Court.  A district court should freely give leave to amend a complaint when justice so requires.  FED. R. CIV. P. 15(a); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000).  A motion to amend is futile when additional factual allegations do not further the plaintiff's legal claim.  *See Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).

Plaintiff's Amended Complaint concerns the same six e-mail messages identified in his complaint.  In addition to the claims asserted in his original complaint, he alleges failure to provide sender's legal name, and misrepresentation of information identifying the point of origin or transmission path of the e-mail, in violation of the Michigan Act, MICH. COMP. LAWS §§ 445.2503(b)(i) and 445.2504 (Dkt 4-2, ¶ 6).  These claims are preempted by CAN-SPAM for the reasons set forth above.  Plaintiff's last allegation fails to state any cognizable claim.  He merely speculates that "Defendant makes claims [in sales offerings] that could be in violation of many other fraud acts in Michigan that will have to be amended as discovery moves forward" (*id.* ¶ 7).  Even if Plaintiff had moved to amend his complaint, leave would be denied as futile.

Plaintiff's motion to remand (Dkt 4) is denied on the grounds that this Court has federal question jurisdiction under CAN-SPAM, which expressly preempts Plaintiff's claims.

## II.  STANDING

Standing to sue is essential to this Court's jurisdiction.  It cannot be waived, and must be addressed even if the parties fail to raise the issue.  *United States v. Hays*, 515 U.S. 737, 742 (1995).  CAN-SPAM provides standing to a limited list of entities.  As the *Virtumundo* court noted: "Congress conferred standing only on a narrow group of possible plaintiffs: the Federal Trade

Commission, certain state and federal agencies, state attorneys general, and IAS [Internet access service] providers adversely affected by violations of the CAN–SPAM Act.  *See* 15 U.S.C. § 7706(a), (b), (f), (g)."  575 F.3d at 1049-50.

The *Virtumundo* court concluded that the plaintiff, who claimed to have received approximately 13,800 spam messages from the defendant, *id.* at 1046, did not have standing under CAN-SPAM.  *Id.* at 1057.  *See also Madorsky v. Does*, No. 1:06-cv-123, 2006 WL 1587349, at *2 (N.D. Ohio June 8, 2006) (claim dismissed because "there is no provision in the statute that gives [an individual] standing to file a private cause of action under the CAN-SPAM Act").  The allegations in Plaintiff's pleading show that he does not fit within any of the categories of entities authorized to sue for violations of CAN-SPAM.  Plaintiff's preempted claim must, therefore, be dismissed for lack of standing.

An Order will be entered consistent with this Opinion.


DATED: October  7 , 2011                              /s/ Janet T. Neff
                                                      JANET T. NEFF
                                                      United States District Judge

8